IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRADLEY MAXWELL, ) | |
|     Plaintiff, ) | Civil Action No. 7:12cv00477 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| HAROLD CLARKE, et al., ) | By: Hon. Jackson L. Kiser |
|     Defendants. ) | Senior United States District Judge |

Bradley Maxwell, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. §§ 2000cc et seq. Maxwell names as defendants Harold Clarke, James Parks, George Hinkle, Gregory Holloway, David Zook, Dennis Collins, T. Farris, H.R. Hensley, Brenda Ravizee, J.W. Carico, B.D. Collins, C.L. Stacy, R.C. Williams, R.C. Mathena, and M. Counts. Maxwell alleges in his complaint that defendants violated his constitutional rights by initially refusing to house him in a Graduated Privilege Program ("GPP"), falsely convicting him of institutional infractions once in the GPP, and subsequently removing him from the GPP and again placing him in segregation. Maxwell further complains that housing him in segregation precludes him from practicing his religion. He concludes that defendants' acts constitute retaliation for his use of the grievance procedure and refusal to comply with the VDOC grooming policy, which would require he violate his Rastafarian faith by cutting his hair. Finally, plaintiff complains that the conditions of his confinement violate the Eight Amendment. This matter is presently before me on defendants' motion for summary judgment. Maxwell filed a response and the matter is now ripe for disposition.[1]

I.     Facts

In considering a motion for summary judgment, a court must consider the facts and draw

---

[1] Maxwell also filed requests for production of documents on April 3, 2013. However, as none of the discovery requested is relevant to the disposition of his claims, his discovery requests will be denied as moot.

all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008).

Maxwell alleges that his religious beliefs as a Rastafarian of the Nyahbinghi order prevent him from complying with the Operating Procedure ("OP") 864.1 grooming policy. Plaintiff attached an exhibit to his response to defendants' motion for summary judgment which explains "the dreadlocks on a Rasta's head symbolize the Rastas roots....This has also come to symbolize rebellion of the system and the 'proper' way to wear hair." (Docket No. 31-2 at 8) OP 864.1 provides, in pertinent part, that male offenders' hair will be cut no longer than above the shirt collar and around the ears, hair will not be more than one inch in thickness or depth, and any style that could conceal contraband, including dreadlocks, is not permitted. (Docket No. 26-1, p. 6)

Maxwell has refused to comply with the grooming policy since his transfer from the U.S. Virgin Islands to the Virginia Department of Corrections ("VDOC") in 2001 and has been subjected to disciplinary charges and administrative segregation as a result.[2] During pertinent

---

[2] Maxwell filed this action on October 5, 2012. Due to the 2 year statute of limitations applicable to § 1983 actions, all § 1983 claims arising prior to October 5, 2010 are time barred. See Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (finding that as there is no statute of limitations for § 1983 violations, the state limitations period governing personal injury actions should be applied); Va. Code Ann. § 8.01-243(a) (establishing a two year statute of limitations for personal injury actions).

RLUIPA does not contain its own statute of limitations period. However, in 1990, Congress enacted 28 U.S.C. § 1658, which provides a four-year statute of limitations period for federal civil actions "arising under an Act of Congress enacted after [December 1, 1990]." Thus, according to the terms of the statute, any federal civil action arising under an Act of Congress enacted after December 1, 1990, is subject to the four-year statute of limitations period contained therein.

In Couch v. Jabe, the court reasoned that, because RLUIPA was enacted in September 2000, and RLUIPA created a new right of action which the plaintiff invoked in his complaint, the four-year statute of limitations under § 1658 applied to plaintiff's claims brought under RLUIPA. 479 F. Supp. 2d 569, 576-577 (W.D. Va. 2006). Similarly, I find that a four year statute of limitations applies to Maxwell's RLUIPA claims and thus all Maxwell's RLUIPA claims arising prior to October 5, 2008 are time barred.

time periods related to this lawsuit, Maxwell has been housed at either Wallens Ridge State Prison ("Wallens Ridge") or Red Onion State Prison ("Red Onion").

Maxwell faces restrictions in segregation that a prisoner in the general population does not. His complaint and response to the motion for summary judgment state he has five hours recreation inside an enclosed recreation area, non-contact visits, two calls monthly, three showers per week, 24 hour lights on with lights dimmed at night, 12 books and magazines and one newspaper, and no television or consumables.[3] He also claims he is not permitted to attend religious services, and is placed in handcuffs and leg irons and strip-searched each time he is removed from his cell.

In September 2010, the GPP was established specifically for offenders who are habitual violators of the grooming policy as a secure alternative permanent segregation. (Docket 26, p. 4) Prisoners in the GPP housing unit have certain additional privileges not available to segregation prisoners, including recreation in the pod with other offenders, double-cell assignments, outside recreation, television and visitation. Following the development of the GPP, Maxwell made "numerous verbal and written requests" to be placed in the program, which were denied. (Docket 1, p. 11) Maxwell was ultimately placed in the GPP housing unit on February 8, 2012. However, Maxwell was subsequently removed from the GPP and transferred to Red Onion after being found guilty of two disciplinary charges. He has since been returned to Wallens Ridge and placed in segregation. According to defendants, he was placed in segregation because it is the practice of Wallens Ridge to place offenders into segregation for 90 days "to determine whether the offender can make a stable adjustment to less restrictive housing." (Docket 26, p. 5) However, due to a possession of a weapon charge, as of March 15, 2013, the date defendants

---

[3] Defendants assert in the motion for summary judgment that offenders in administrative segregation pods are allowed to watch television from their cells and may receive restricted commissary.

Plaintiff notes that prior to July 9, 2001 no visits, calls (except for lawyer calls) or education was allowed.

3

filed their motion for summary judgment, Maxwell was not currently eligible to participate in the GPP. He will be evaluated for future entry into the program at his ICA hearing, which occurs every 90 days. (Docket No. 26, p. 8)

In his complaint, Maxwell appears to seek monetary damages and either immediate release from segregation and transfer to the GPP housing unit, or exemption from OP 864.1, which would assumedly allow him to be housed with the general population.

II.   Analysis

A.   Improper Processing of Institutional Grievances

Maxwell alleges that defendants have violated his constitutional rights by failing to properly process his institutional grievances. Specifically, plaintiff claims that defendant T. Farris told him "to drop numerous grievances" because he was angering correctional staff and that Brenda Ravizee denied his grievance regarding release as "repetitive" of another grievance, when it actually raised a different issue. (Docket No. 1, p. 13-14) However, inmates have no constitutionally protected right to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Blagman v. White, 112 F. Supp. 2d 534, 542 (W.D. Va. 2000). Therefore, Maxwell's allegations regarding defendants' alleged failure to properly process institutional grievances are not cognizable under 42 U.S.C. § 1983. As such, defendants' motion for summary judgment must be granted regarding these claims.

B.   Filing of False Charges as Retaliation

Maxwell alleges that defendant R.C. Williams issued a false charge against him for using gang signs (Disciplinary Offense Code 248), as retaliation for plaintiff's use of the grievance procedure. Plaintiff further alleges that defendants J.W. Carico and C.L. Stacy issued a false charge against him for participating or encouraging others to participate in work stoppage or a group demonstration (Disciplinary Offense Code 128), also as retaliation for plaintiff's use of the

4

grievance procedure. Plaintiff further alleges that defendant B.D. Collins authorized both false offense codes.

To succeed on a § 1983 claim that prison officials retaliated against him, an inmate must show that his exercise of a constitutional right was a substantial factor motivating the retaliatory action. See Adams, 40 F.3d at 75. The inmate must present more than conclusory allegations of retaliation by alleging facts showing that his exercise of a constitutional right was a substantial factor motivating the retaliatory action. See, e.g., American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action"); Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (same). Mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory action "is simply too slender a reed on which to rest" a §1983 retaliation claim. Wagner, 13 F.3d at 91. Maxwell has presented no evidence outside of his bald assertion, that the charges filed by these defendants had anything to do with this lawsuit or with any grievances that he filed. Maxwell makes no claim that R. C. Williams, C. L. Stacy, J.W. Carico, or B. D. Collins were even aware that he was filing "numerous" grievances or grievances regarding the grooming policy or the GPP. Thus, Maxwell's attempted claim fails under both parts of the constitutional standard. First, since plaintiff had no constitutional right to the jail's grievance procedure, his use of the procedure did not constitute exercise of a constitutionally protected right. Second, Maxwell fails to state any facts suggesting that the defendants' challenged actions were, in any way, motivated by his grievances. I need not accept as true plaintiff's conclusory assertion to the contrary, and a claim grounded in nothing more than unsupported assertions of retaliation is subject to summary judgment.

C. Unfair Disciplinary Hearings and Appeal

5

Maxwell alleges that defendants H.R. Hensley, M. Counts, Gregory Holloway, George Hinkle and R.C. Mathena violated his Fourteenth Amendment right to due process and his First Amendment right to petition the government for redress of grievances because he did not receive a fair disciplinary hearing or appeal. Specifically, Maxwell states that Hensley found him guilty of Disciplinary Offense Codes 128 and 248 based on false information and insufficient evidence. Plaintiff further claims that, on rehearing, Counts found plaintiff guilty of Disciplinary Offense Code 128 based on insufficient evidence. Finally, Maxwell states that Hinkle, Holloway and Mathena upheld the guilty verdicts on both charges based on false testimony and evidence. Maxwell claims that as a result of these disciplinary charges and rulings, he is still confined to segregation, while other grooming policy offenders who received offense reports were sent to the GPP unit.

To establish a violation of procedural due process guaranteed by the Fourteenth Amendment, an inmate must demonstrate a deprivation of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. See, Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Maxwell has alleged that the disciplinary rulings caused him to be confined to segregation, instead of remaining in the GPP unit. However, because the conditions of segregation do not present an atypical hardship or enhance his sentence, Maxwell has no liberty interest in being in the GPP unit rather than in segregation. Therefore, he has no federally protected due process right here.

Moreover, Maxwell received due process protections. Under the standard established in Wolff v. McDonnell, 418 U.S. 539 (1974), an inmate is entitled to the following due process: (1)

6

written notice of the charges at least twenty-four (24) hours in advance of the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and (3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-566. Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Superintendant v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

Here, Maxwell does not allege that he was denied the right to call and cross-examine witnesses, and the disciplinary hearing record states he submitted witness request forms, which were determined relevant and reviewed as evidence. Additionally, a review of the record reflects that the disciplinary charges were supported by some evidence. Regarding Disciplinary Offense Code 248, correctional officer Williams testified that he had a clear view of plaintiff's arms and hands and had been trained to identify gang signs. Regarding Disciplinary Offense Code 128, a copy of the letter found in plaintiff's cell by correctional officer Stacy contained directions from plaintiff on how to carry out a coordinated hunger strike. Based on the foregoing, Maxwell has not alleged any constitutional violations in connection with his disciplinary hearings, and defendants' motion for summary judgment must be granted regarding these claims.

D. Violation of the Eighth Amendment

Maxwell alleges that the conditions of confinement in administrative segregation constitute cruel and unusual punishment under the Eighth Amendment. He states his administrative segregation amounts to "punitive conditions of isolation, constant First Amendment deprivation [and] miniscule social connections." (Docket No. 1, p. 19) Maxwell lists the conditions of confinement as follows: five hours recreation inside an enclosed recreation area, non-contact visits, two calls monthly, three showers per week, 24 hour lights on with lights dimmed at night, 12 books and magazines and one newspaper and no television or consumables.

He also states he is not permitted to attend religious services and is placed in handcuffs and leg irons each time he is removed from his cell.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials provide humane conditions of confinement. Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Thus, a plaintiff must describe an objectively serious deprivation of a basic human need and that a prison official was deliberately indifferent to an inmate's health or safety to state a violation of the Eighth Amendment. Id. at 834; Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Id. at 838. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

None of Maxwell's claims state a violation of the Eighth Amendment. Maxwell does not allege any significant physical or emotional injury resulting from any challenged condition. See Strickler, 989 F.2d at 1381 (requiring an inmate to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions to succeed on an Eighth Amendment claim). Plaintiff also does not allege an objectively serious deprivation of a basic human need. Accordingly, Maxwell fails to state a violation of the Eighth Amendment and defendants' motion for summary judgment must be granted regarding these claims.

E. Free Exercise of Religion under RLUIPA

Maxwell claims that defendants' actions in denying him an exemption from OP 864.1 and confining him to segregation for violation of the policy violated his right to the free exercise

of his religion under RLUIPA. Maxwell states that confinement to segregation precludes him from practicing his religion, including group prayer. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," 42 U.S.C. § 2000cc-1(a), unless it demonstrates that, the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Id.; Lovelace v. Lee, 472 F.3d 174, 189 (4th Cir. 2006). Thus, to state a prima facie case under RLUIPA, Maxwell must demonstrate that the challenged practice substantially burdens his exercise of religion. If he is successful, the burden of persuasion shifts to the government to prove that the burden on religious exercise is the least restrictive means of furthering a compelling state interest. While Congress mandated that RLUIPA be construed "in favor of broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), the Supreme Court has also determined that lawmakers intended courts to "apply RLUIPA's standards with due deference to the experience and expertise of prison and jail administrators." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005).

For purposes of this motion, I assume that the grooming policy, which confines Maxwell to segregation without permission to attend religious services for his refusal to cut his hair, substantially burdens the Maxwell's religious beliefs. Defendants state in their memorandum in support of defendants' motion for summary judgment that, "[t]he VDOC does not contest that its actions place a substantial burden on Plaintiff's religious exercise." (Docket No. 26) This position is supported by similar cases. See, e.g., Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012) (concluding that placing a prisoner in segregation for a religiously-motivated violation of VDOC's grooming policy constitutes a substantial burden under RLUIPA). There is no dispute about the religious motivation for Maxwell's refusal to cut his hair and defendants have not

9

questioned Maxwell's sincerity. Therefore, I conclude that Maxwell has stated a prima facie case.

(1) Compelling State Interest

The burden of persuasion now shifts to the defendants to show that OP 864.1 is supported by a compelling state interest pursued by the least restrictive means. In Couch, the Fourth Circuit recently concluded that OP 864.1[4] satisfied the RLUIPA compelling state interest test because the proffered explanation "connected the Policy's restrictions to specific health and security concerns and showed that those concerns are furthered by the Policy." 679 F.3d at 202.[5] The explanation given by the defendants in the present case is largely identical to the explanation provided to the Fourth Circuit in Couch, 679 F.3d at 202. Defendants argue they have a compelling governmental interest in promoting safety, security, health, sanitation and establishing uniform grooming standards for offenders:

> The VDOC implemented its grooming policy to facilitate the identification of offenders, to promote safety, security, sanitation, and to establish uniform grooming standards for offenders in VDOC facilities. Allowing offenders to have hair styles that do not comply with this policy poses a security risk for other inmates and staff because offenders can use certain hairstyles to hide contraband, including weapons or other items prohibited in VDOC facilities. Left unregulated, inmates can also use their hair to identify with gangs, which poses a security risk, or to quickly change appearance; the latter being very important in the event of an attempted or actual escape. Furthermore, the health and safety of inmates is increased by promoting better hygiene.

(Docket No. 26, pp. 16-17) I find that OP 864.1's requirement that prisoners either cut their hair to a certain length and style, or be housed in segregation, satisfies the RLUIPA compelling state interest test. See Couch, 679 F.3d at 202 citing Jova v. Smith, 582 F.3d 410, 416 (2d Cir. 2009) (finding a compelling interest based on "affidavits and exhibits which showed that the restrictions imposed . . . were justified by powerful security and administrative interests"); also

---

[4] VDOC's policy has been revised with regard to beard length since the Couch decision, however, according to the defendants, the policy has not been changed with regard to hair length and styles permitted. Thus, the revision does not affect the compelling state interest finding.

[5] In Couch, the petitioner was challenging a policy which prohibited him from growing a beard, not regarding hair length. However, the compelling state interest analysis regarding the grooming policy is virtually identical.

10

citing DeMoss v. Crain, 636 F.3d 145, 153-54 (5th Cir. 2011) (per curiam) (finding no clear error in district court's conclusion at bench trial that grooming policy furthered compelling interests within a prison based on security concerns such as easy identification, gang affiliation, and the ability to conceal contraband within a beard).

(2) Least Restrictive Means

The prison officials must also establish that the grooming policy's provisions regarding hair length and segregation for violators are the least restrictive means of furthering the compelling governmental interests that they identify. See 42 U.S.C. § 2000cc-1(a)(2). "RLUIPA adopts a . . . strict scrutiny" standard. Lovelace, 472 F.3d at 198 n.8; see also Vision Church v. Vill. of Long Grove, 468 F.3d 975, 996 (7th Cir. 2006) ("RLUIPA provide[s] that, if a facially-neutral law . . . imposes a substantial burden on religion, it is subject to strict scrutiny.").

However, RLUIPA was not intended to "elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter, 544 U.S. at 722; Lovelace, 472 F.3d at 190. The Supreme Court has noted that its' "decisions indicate that an accommodation must be measured so that it does not override other significant interests" and thereby run afoul of the Establishment Clause. Id. Therefore, in analyzing whether a particular regulation is the least restrictive means of furthering the government's compelling security interest, the reviewing court must avoid "substituting its judgment in place of the experience and expertise of prison officials." Hoevenaar v. Lazaroff, 422 F.3d 366, 370 (6th Cir. 2006) ("In conducting an analysis of whether the regulation in issue was the least restrictive means of furthering the government's compelling security interest, the district court did just what the Supreme Court and Congress have warned against: substituting its judgment in place of the experience and expertise of prison officials."). Moreover, prison administrators do not have to refute every conceivable option to satisfy the least restrictive means prong of [RLUIPA]. Hamilton v. Schriro, 74 F.3d 1545, 1556 (8th Cir.1996) (applying RFRA); accord Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 41 n. 11 (1st

11

Cir. 2007) (suggesting that "to meet the least restrictive means test, prison administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation") (applying RLUIPA); see also Couch, 679 F.3d at 203 (The court stated it "required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives.").

    Maxwell does not suggest any alternative to the grooming policy, other than asking the court for an injunction to "immediately stop the enforcement of [the grooming policy] as applied to the plaintiff." (Docket No. 1, pp. 21, 25) Defendants assert that the VDOC's grooming policy is the least restrictive means available to further the government's compelling state interest in promoting safety, security, health and sanitation and in establishing uniform grooming standards for offenders. In Ragland v. Angelone the VDOC grooming policy regarding hair length and style and the segregation of violators, was upheld in the face of a challenge under RLUIPA. 420 F.Supp.2d 507 (W.D. Va. 2006) (Turk, J.), aff'd, Ragland v. Powell, 193 Fed. Appx. 218 (4th Cir. 2006) (unpublished), cert. denied, Ragland v. Powell, 127 S. Ct. 1877 (March 26, 2007). Similar to Maxwell, the plaintiff in Ragland was of the Rastafarian religion, Nyahbinghi Order, and refused to cut his hair, resulting in his assignment to segregation. Id. at 510. At that time, the GPP had not yet been instituted and the VDOC grooming policy provided that inmates who refused to comply remained assigned to segregation until full compliance.[6] The court, noting that Ragland retained his right to practice his religious belief that his hair and beard not be cut,

---

[6] Subsequent to the decision in Ragland, in September 2010, the VDOC developed the GPP to maintain grooming policy violators in a secure environment without all the restrictions of segregation status. However, entry into the program is not guaranteed, or instantaneous. Offenders who violate OP 864.1 are placed into segregation for one year, where their behavior is monitored and their status is reviewed every 90 days. At the end of the year, if an offender still refuses to comply with the grooming policy, but has consistently complied with other prison rules and regulations, the offender may be placed into GPP. Defendants state that the one-year segregation period tests the sincerity of prisoner's beliefs and contains the cost of running the GPP pod, which requires extra security. While Ragland does not address the one-year segregation period, it does hold that prisoners who violate the grooming policy may be held in segregation indefinitely. Thus, a less restrictive option of alternative housing for grooming policy violators would certainly pass constitutional muster. Moreover, plaintiff does not specifically challenge the one-year waiting period under RLUIPA. His Equal Protection claim regarding entry into the GPP is addressed below.

"defer[ed] to prison officials' judgment in crafting segregation restrictions so as to control as effectively as possible the difficult segregation population." Id. at 519. Maxwell, during his entire period with the VDOC since 2001, has also not been forced to cut his hair.

In the instant case, beyond simply asking for an "exemption" from the grooming policy, plaintiff does not describe any manner in which VDOC could except him from the policy, based on his religious beliefs, without incurring additional security risks. Moreover, defendants have explained that, among other risks, allowing offenders to have hairstyles that do not comply with OP 864.1 allows them to hide contraband, including weapons and change their appearance quickly, which poses a security risk in the event of escape. (Docket No. 26-1, Aff. R. Mathena) The provisions of the grooming policy which defendants have enforced against Maxwell, that he will be housed in segregation unless he cuts his hair, have been upheld. Thus, I find that these provisions of the grooming policy are the least restrictive means of furthering the compelling governmental interests identified.

For these reasons, I find defendants' motion for summary judgment should be granted regarding plaintiff's RLUIPA claims.

F.  Free Exercise of Religion under the First Amendment

Maxwell also raises claims challenging the grooming policy on First Amendment grounds. In comparison to RLUIPA's strict scrutiny standard, the court applies a "rational means" test when evaluating First Amendment Free Exercise claims. Under this test, the government bears the burden of demonstrating only that the regulation is "reasonably related to legitimate penological interests." Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-53 (1987)). This is a less demanding standard than RLUIPA. Therefore, if the grooming policy survives scrutiny under RLUIPA, it necessarily also passes muster under the First Amendment's rational means test. See Charles v. Frank, 101 Fed. App'x 634, 635 (7th Cir. 2004); see also Lovelace, 472 F.3d at 199-200 ("[T]he

13

First Amendment affords less protection to inmate's free exercise rights than does RLUIPA."). Because I find that VDOC's grooming policy satisfies RLUIPA's strict scrutiny standard, I also find it satisfies scrutiny under the First Amendment. Accordingly, I grant the defendants' motion for summary judgment on this claim as well.

    G. Equal Protection Claim Regarding Access to Graduated Privilege Program

Maxwell alleges defendants denied him access to the GPP at Keen Mountain Correctional Center and Wallens Ridge in violation of his Equal Protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995). To succeed on this claim, Maxwell "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). In a prison context, this level of scrutiny is "whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" Veney, 293 F.3d at 732 (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

All that supports Maxwell's Equal Protection claim is his unsubstantiated assertion that VDOC officials, including defendants Clarke, Parks, Hinkle, Holloway, Zook, Collins and Farris, are discriminating against him. Maxwell claims that "a few institutions" transferred OP 864.1 offenders to the GPP in November 2010; however, despite his repeated requests to be placed in the GPP when it began in 2010, he was not placed in the program until February 2012.

14

Maxwell also claims that he "is still confined to segregation while other 864.1 offenders whom receive offense reports was sent to the 864.1 GPP unit." (Docket No. 1, p. 18) He does not identify these alleged other offenders, or provide any details regarding their disciplinary charges, beyond stating they were placed in the GPP unit two months after a "133 offense." (Docket No. 31) Maxwell has offered no evidence, statistical or otherwise, to show that he is similarly situated to the offenders transferred in November 2010, or those prisoners currently in the GPP, or that discrimination motivates his exclusion from the program. To avoid summary judgment, Maxwell must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003); see also White v. Boyle, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). Indeed, the evidence is that Maxwell was placed in the GPP housing unit on February 8, 2012, where he remained for two months before being found guilty of disciplinary charges that resulted in his removal from the GPP and transfer to Red Onion. (Docket No. 26, p. 8) Due to a weapons charge while at Red Onion, Maxwell is not currently eligible to participate in the GPP. However, he will be evaluated at his Institutional Classification Authority hearing, which takes place every 90 days, for future entry into the program. (Docket No. 26, p. 3,8,9) Because Maxwell has submitted nothing more than conclusory allegations regarding discrimination, I will grant the defendants' motion for summary judgment on his Equal Protection claim.

H. Due Process Claim Regarding Access to the GPP

Maxwell claims that defendants' arbitrary application of OP 864.1 violates his due process rights, "imposing atypical and significant hardships in relation to the ordinary incidents of prison life." (Docket No. 1, p. 19) Ostensibly, Maxwell attempts to invoke due process protections afforded by the Fourteenth Amendment, but he may not state a claim by relying on buzzwords, labels, or conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Moreover, when a defendant is lawfully convicted and confined to prison, he loses a significant

15

interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Inmates have no protected liberty interest in being housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224-25 (1976)("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). To state a claim that he has a protected liberty interest related to long-term administrative confinement, an inmate must first allege facts demonstrating that conditions to which he is subject in that confinement status constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Maxwell has not alleged any facts demonstrating this. See, e.g., Beverati, 120 F.3d at 503 (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship); Sandin, 515 U.S. at 486-87 (holding custodial classifications do not create a major disruption in a prisoner's environment). To the extent plaintiff alleges that his placement in segregation violates his federal due process rights, his allegations are without merit. Thus, I will grant the defendants' motion for summary judgment on Maxwell's due process claim.

III. Conclusion

For the reasons stated above, I grant the defendants' motion for summary judgment on all of plaintiff's claims.

The Clerk of the Court is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 13th day of June, 2013.

Senior United States District Judge

16